SOUTHSIDE COMMUNITY DEVELOPMENT CORPORATION, APPELLEE, *v.* LEVIN, TAX COMMR., ET AL., APPELLEES; MAHONING COUNTY, APPELLANT.

[Cite as *Southside Community Dev. Corp. v. Levin,*
119 Ohio St.3d 521, 2008-Ohio-4839.]

(No. 2007–1722—Submitted June 24, 2008—Decided October 1, 2008.)

Lanzinger, J.

{¶ 1} Mahoning County appeals an interim order of the Board of Tax Appeals ("BTA") denying the county's motion to intervene in an appeal of the Tax Commissioner's denial of a tax-exemption application for 2004 filed by Southside Community Development Corporation. Southside had filed for bankruptcy after applying for the exemption, and the bankruptcy trustee had appealed the denial of the exemption to the BTA. Because the county purchased the property from the bankruptcy trustee and is the current owner whose rights are affected by the past tax liens, the county claims that it has standing and seeks to pursue the exemption by intervening at the BTA.

{¶ 2} The BTA denied the county's motion to intervene, and the county filed an interlocutory appeal in this court. We previously overruled the Tax Commissioner's motion to dismiss the appeal. *Southside Community Dev. Corp. v. Levin*, 116 Ohio St.3d 1209, 2007-Ohio-6665, 878 N.E.2d 1048. We now address the procedural issue presented by the appeal: whether Mahoning County as current owner of the property has standing to intervene at the BTA and to pursue the exemption application. We hold that the county lacks standing, and we therefore affirm the interim order of the BTA.

## Case Background

{¶ 3} The property at issue consists of eight parcels and improvements, located in the Youngstown School District. This tract includes a building with 273,219 square feet of net leasable area and parking facilities. When the application was filed, tenants included a mix of nonprofit, governmental, and for-profit entities. The property's taxable or exempt status as of January 1, 2004, the lien date, will be the subject of the BTA's determination.

{¶ 4} On December 28, 2004, Southside Community Development Corporation filed an application to exempt the property for the 2004 tax year. Southside predicated its claim of exemption on exclusive charitable use under R.C. 5709.12. The Tax Commissioner ultimately denied the application on April 7, 2006.

{¶ 5} Southside then went into bankruptcy, and the bankruptcy trustee appealed to the BTA from the Tax Commissioner's denial of the exemption. Mahoning County purchased the property from the bankruptcy trustee on July 27, 2006, and almost 11 months later filed a motion to intervene in the BTA appeal. The Tax Commissioner opposed the motion, and on August 24, 2007, the BTA issued its interim order denying intervention. The BTA held that the county had no

statutory right to participate because (1) it did not own the property when the application was filed and (2) it did not qualify as a person with a right to appeal to the BTA when that appeal was filed. The county appealed the interim order to this court. The Tax Commissioner filed a motion to dismiss, alleging that the appeal was premature and that the interim order was not a final, appealable order. We denied that motion.

### The Privity Argument

{¶ 6} Mahoning County argues primarily that because it purchased the property, it stands in privity with Southside and succeeds to Southside's right to pursue the application for tax exemption. Ultimately, however, no common-law concept of privity or successorship controls this case. The right to prosecute an application for exemption involves an administrative procedure statutorily created and delimited. See *Performing Arts School of Metro. Toledo, Inc. v. Wilkins,* 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649, ¶ 19; *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision* (1999), 86 Ohio St.3d 181, 183, 712 N.E.2d 751, quoting *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002, fn. 4 (in administrative proceedings " 'parties must meet strict standing requirements in order to satisfy the threshold requirement for the administrative tribunal to obtain jurisdiction' "). As a result, the question is whether the statutes permit a later owner to intervene in a pending application proceeding as a successor or substitute for the original applicant.

{¶ 7} The statutes do not permit either intervention or substitution. The right to obtain exemption for a particular tax year depends upon the particular applicant's ownership and use of the property on the lien date of that year. See *Sylvania Church of God v. Levin,* 118 Ohio St.3d 260, 2008-Ohio-2448, 888 N.E.2d 408, ¶ 4, 6, 9, citing *Episcopal School of Cincinnati v. Levin,* 117 Ohio St.3d 412, 2008-Ohio-939, 884 N.E.2d 561, ¶ 23. If exempt use begins in earlier years, the statutes allow an applicant to obtain remission of taxes for up to three preceding years, subject to a limitation that is crucial for purposes of this case. R.C. 5713.08(B).[1] That limitation relates to the time of ownership: the applicant *must own the property on the lien date of the prior year* for which the tax benefit of an exempt use is claimed.

{¶ 8} Although R.C. 5713.08(B) pertains only to remission and does not directly address the question of intervention or substitution, this statutory limitation reflects a broader legislative intent that a later owner may not, through its own

---

1. R.C. 5713.08(B) provides: "Any taxes, interest, and penalties which have become a lien after the property was first used for the exempt purpose, *but in no case prior to the date of acquisition of the title to the property by the applicant,* may be remitted by the commissioner * * *." (Emphasis added.)

litigation, obtain the tax benefit of exemption for a prior year, when it did not own the property on the lien date of that year. Mahoning County, the subsequent owner, may not intervene or step into the shoes of the applicant, Southside Community Development Corporation, because it did not own the property on the lien date, which was January 1, 2004. Allowing intervention would contravene the statute's intent.

{¶ 9} In determining legislative intent, we note that our reading of the statutes accords with the substantive nature of an exemption claim. A property's taxable or exempt status typically depends upon a close examination of the property's owner and its particular use; an owner must offer proof of exemption for each tax year in which the property's taxable status is at issue. R.C. 5715.271. In the present case, an exemption for exclusive charitable use is sought under R.C. 5709.12. Such an exemption is available under two circumstances: if the owner is an institution and its own use qualifies as "exclusive charitable use," or if an owner is a charitable or educational institution and the property is used by others "in furtherance of or incidental to" the owner's charitable or educational mission. R.C. 5709.12(B) and 5709.121; see, e.g., *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 12; *Community Health Professionals, Inc. v. Levin*, 113 Ohio St.3d 432, 2007-Ohio-2336, 866 N.E.2d 478, ¶ 18, 22, 23; *Cincinnati Community Kollel v. Levin*, 113 Ohio St.3d 138, 2007-Ohio-1249, 863 N.E.2d 147, ¶ 10, 20, 21. It is logical that the General Assembly would decide that only an entity whose ownership and use of a property establish its exempt status on a particular tax-lien date should be permitted to pursue the application that relates to that date.

{¶ 10} Furthermore, the exemption statutes do not require that notice be given to later owners, such as purchasers, of the property. The exemption statutes differ in this regard from the property-valuation statutes. In a valuation proceeding, a new owner of the property must be notified of hearings and decisions, and that notice entitles the later owner to participate in the proceedings.[2] For example, in *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 114 Ohio St.3d 1224, 2007-Ohio-4007, 871 N.E.2d 602, ¶ 4, we

---

2. See R.C. 5715.12 (no increase in value is to be ordered unless "the person in whose name the property affected thereby is listed" has the opportunity to be heard), 5715.19(B) (when the amount of value at issue is great enough, the board of revision must give notice of the filing of a valuation complaint to "each property owner whose property is the subject of the complaint" if the complaint was not filed by the owner), 5715.19(C) (notice of hearing at the board of revision is to be given to the complainant and to the property owner), 5715.20 (the board of revision is to certify its decision to the "person in whose name the property is listed or sought to be listed"), 5717.03 (in a valuation case, the BTA must certify its decision to the "person in whose name the property is listed or sought to be listed"), 5717.04 (the party who appeals from the BTA to the court must join as appellees and serve its notice of appeal on those persons to whom the BTA must certify its decision, including the person in whose name the property is listed).

held that under R.C. 5717.03(B), "the 'person in whose name the property is listed or sought to be listed' is the person whom the record shows to be the owner of the property as of the time that the BTA was required to certify its decision."

{¶ 11} In contrast, there are no comparable notice requirements in proceedings on exemption applications, and that omission leads to the conclusion that later owners were not intended by the General Assembly to participate in application proceedings on tax exemptions. Because the statutes do not permit intervention by or substitution of a property's purchaser in an exemption proceeding, the BTA correctly denied the county's motion to intervene.

### The Statutory Argument—R.C. 5717.02

{¶ 12} In addition to arguing that it stands in privity with its seller, Mahoning County claims that because it is "the taxpayer," it has standing under R.C. 5717.02,[3] which authorizes appeals to the BTA from determinations of the Tax Commissioner. The BTA disposed of this claim by observing that the county "did not have an interest in the subject either at the time the commissioner issued the final determination or at the time the determination could be appealed to this board." *Southside Community Dev. Corp. v. Wilkins* (Aug. 24, 2007), BTA No. 2006–T–635, at 6. In the BTA's view, because the county had no interest in the property during the time the denial of exemption could be appealed, the county could not participate in the appeal. We agree with the BTA's disposition of this issue, because R.C. 5717.02 does not authorize intervention as an appellant or provide for a substitution of a later purchaser for the current appellant.

{¶ 13} As already discussed, those who seek party status in administrative proceedings "must meet strict standing requirements." *Tubbs Jones*, 84 Ohio St.3d at 77, 701 N.E.2d 1002, fn. 4. R.C. 5717.02 states who may appeal a determination of the Tax Commissioner but simply does not authorize any person to enter the case later as an appellant.

{¶ 14} Moreover, an appellant's intervention cannot be reconciled with R.C. 5717.02's separate requirement that those who appeal to the BTA from final determinations of the Tax Commissioner must "specify the errors * * * complained of" in that determination. Failure to do so means that the BTA acquires no jurisdiction to grant the party relief on the basis of the unspecified error. See *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 75, 23 O.O.3d 118, 430 N.E.2d 939; *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 114, 15 O.O.3d 152, 399 N.E.2d 1222.

---

3. R.C. 5717.02 specifies who may appeal a final determination of the Tax Commissioner. Those persons include "the taxpayer," the person to whom the Tax Commissioner must give notice of his determination, the director of the state Office of Budget and Management if state revenues are primarily affected, and the county auditors of counties whose revenues are primarily affected.

{¶ 15} In this case, Southside Community Development Corporation's bankruptcy trustee filed the only notice of appeal conferring jurisdiction on the BTA. Mahoning County as a later purchaser may not jurisdictionally piggyback its own claim for relief onto a notice of appeal filed by another entity. To permit a party to do so would, in effect, allow an end run around both the filing and the specification requirements set forth in R.C. 5717.02. This is particularly true where, as here, the original appellant may abandon its claims. Indeed, if the party that originally filed a notice of appeal were to dismiss that appeal altogether, there would be no specifications of error that would permit the BTA to take jurisdiction over the case. See *Queen City Valves v. Peck* (1954), 161 Ohio St. 579, 53 O.O. 430, 120 N.E.2d 310. In such a situation, the appeal would jurisdictionally evaporate, even if intervention had been granted to another party to litigate as an appellant.

{¶ 16} R.C. 5717.02 also contains no authority for the assertion that the county may substitute itself for Southside. Indeed, to permit the substitution would imply that the original applicant is actually divested of authority to pursue the appeal once it sells the property. Such a limitation has not been recognized in the past, and the statute does not impose it. See, e.g., *Episcopal School of Cincinnati v. Levin*, 117 Ohio St.3d 412, 2008-Ohio-939, 884 N.E.2d 561, ¶ 4 (the exemption applicant continued to pursue its exemption before the Tax Commissioner, the BTA, and the court, even though it had sold the property while the application was pending before the commissioner).

{¶ 17} R.C. 5717.02 does not authorize the county to intervene in this case.

### Fundamental Fairness

{¶ 18} Mahoning County also contends that "fundamental fairness" demands that it be accorded the right to pursue Southside's application for exemption at the BTA. In its notice of appeal to the court, the county asserts that denial of intervention violates constitutional due process. We disagree.

{¶ 19} Although the county, as current owner of the property, is subject to the tax lien of prior years and must make sure that back taxes are paid to enjoy continued ownership and possession of its property, the county is in the same position as any purchaser of real property, even one whose predecessor had not applied for a property tax exemption. When the county purchased the property, it knew or had reason to know that the Tax Commissioner had denied the exemption claim and that the tax lien would have to be satisfied. Nothing prevented the county from protecting itself in the purchase agreement against past tax liabilities. If the county had, for example, conditioned its purchase on Southside's obtaining the exemption, it would be free to walk away from the purchase if Southside failed to do so.

{¶ 20} Because the county was on actual or constructive notice of the property taxes when it purchased the property, it has no constitutional due process right to challenge those tax liabilities now.

## Conclusion

{¶ 21} We conclude that the BTA reasonably and lawfully determined that Mahoning County had no right to intervene. Accordingly, we affirm the interim order of the BTA and allow the BTA freedom to conduct further proceedings in the case.

Order affirmed.

MOYER, C.J., and O'DONNELL and CUPP, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and O'CONNOR, JJ., dissent.

———————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 22} I believe that Mahoning County has a right to intervene in the tax appeal pending before the BTA. Therefore, I respectfully dissent.

{¶ 23} The majority holds that neither the tax laws nor privity justifies Mahoning County in intervening in the tax appeal. The majority also holds that preventing Mahoning County from intervening is not fundamentally unfair.

### R.C. 5717.02 and Privity

{¶ 24} As the majority recognizes, the tax statutes do not expressly prohibit intervention in a tax appeal. Instead, the majority holds that the tax exemption statutes imply a legislative intent to prevent a later owner, through its own litigation, from obtaining a tax benefit of exemption for a prior year, when it did not own the property on the lien date of that year. The majority relies in part upon R.C. 5713.08(B), which requires that an *applicant* for an exemption *must own the property on the lien date* of the prior year for which the tax benefit of an exempt use is claimed to support the conclusion that the purchaser of real property may not intervene in a pending appeal before the BTA to contest the denial of an exemption. The majority recognizes that R.C. 5713.08(B) applies only to remission, but nevertheless holds that it "reflects a broader legislative intent that a later owner may not, through its own litigation, obtain the tax benefit of exemption for a prior year, when it did not own the property on the lien date of that year."

{¶ 25} The issue here is whether a property owner has standing to intervene in a *pending* tax appeal filed by the prior owner of the property. Therefore, the requirements for a property owner *applying* for an exemption are not persuasive in determining whether a property owner can intervene in a pending appeal.

{¶ 26} R.C. 5717.02 provides that a "taxpayer" may appeal a final determination by the Tax Commissioner to the BTA. Although the owner of real property is not personally responsible for any tax obligations on that land, the owner has a substantial interest, in that tax liens affect the property's value and can ultimately result in a judicial sale to satisfy them. See *S. Ohio Sav. Bank & Trust Co. v. Bolce* (1956), 165 Ohio St. 201, 208, 59 O.O. 290, 135 N.E.2d 382 (obligations for real property tax are not personal but "run with the land"). In other words, the current owner of real property is the taxpayer. Thus, I would hold that for purposes of intervening in a pending tax appeal filed by the property's prior owner, R.C. 5717.02 indicates that the owner of real property has standing to intervene and to litigate a pending appeal filed by the prior owner of the property.

{¶ 27} Common-law principles also support the notion that a buyer of real property has a right to join and litigate a pending tax appeal pertaining to the property. The buyer and seller of real property are in privity, and consequently, the buyer of real property " 'stands in the same shoes' as to the rights of the prior owner in the same property, thereby giving the [buyer] the same rights and obligation as the original owner had in regard to the property." *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 370, 30 O.O.2d 385, 205 N.E.2d 23, see also *Columbus v. Union Cemetery Assn.* (1976), 45 Ohio St.2d 47, 74 O.O.2d 79, 341 N.E.2d 298. Thus, I would also hold that privity supports the proposition that a property owner should be allowed to intervene in a pending tax appeal filed by the prior owner.

### Fundamental Fairness

{¶ 28} The majority holds that denying Mahoning County the right to intervene in the instant tax appeal does not violate fundamental fairness. I disagree. Even though Mahoning County knew or should have known of the potential tax obligation on the property, I believe that as the new owner of the property, it had an expectation that it could pursue the pending tax appeal by stepping into the shoes of Southside. Therefore, I believe that denying Mahoning County the right to intervene in the tax appeal violates fundamental fairness.

{¶ 29} Accordingly, I would hold that R.C. 5717.02, the common-law principle of privity, and fundamental fairness justify permitting Mahoning County to intervene in the pending tax appeal. Accordingly, I respectfully dissent.

PFEIFER and O'CONNOR, JJ., concur in the foregoing opinion.

---

Nancy Hardin Rogers, Attorney General, and Damion M. Clifford, Assistant Attorney General, for appellee Tax Commissioner of Ohio.

Harrington, Hoppe & Mitchell, Ltd., and Carmen V. Codjoe, for appellant.